IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROY LIONEL FLENNORY,

        Petitioner,

   v.

MARK NOOTH,

        Respondent.

Case No. 2:15-cv-00803-HZ

OPINION AND ORDER

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

     Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

     Attorneys for Respondent

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his 2008 state-court conviction for Kidnapping. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

**BACKGROUND**

In 2007, the Marion County Grand Jury charged petitioner with a single count of Kidnapping in the First Degree based upon the forcible abduction of Marquita Quarles, a Shell gas station attendant. Respondent's Exhibit 102. Petitioner proceeded to a bench trial where he and the victim gave two very different accounts of what transpired between them. According to Quarles' trial testimony, petitioner visited the Shell station twice on the evening in question. During his second visit, he called Quarles over to his car and informed her that he was a private investigator employed by her family and was there to pick her up. Quarles was standing on the passenger side of the car, and petitioner forcefully opened the door into her stomach, grabbed her with one arm, and pulled her into the car. Petitioner leaned over and shut the door, and although Quarles repeatedly tried to get out, the door did not open.

Petitioner told Quarles that he was going to "de-virginize" her and asked if she wanted drugs. Trial Transcript, pp. 23-24. Quarles used her cell phone to call John Rogers, a co-worker at the Shell station, to tell him she was being kidnapped. Petitioner took the phone from her and told Rogers that he would kill him if he called anyone.

2 - OPINION AND ORDER

Petitioner then stopped the car near two women walking alongside the road and instructed Quarles to ask them for directions. Quarles testified that she thought this was a ruse to force the women into the car, so she refused. Petitioner drove to a remote area where Quarles physically fought with him until she was able to regain possession of her phone. At approximately this time, Quarles stated that the passenger door of the car "just suddenly opened for some reason." *Id* at 64.

Ian Hartwig-Morris was driving behind petitioner's car with his friend Max Miller when they saw petitioner's car come to a stop in the roadway, and Quarles "struggled to get out, like she was trying to get out as, like, fast as she could . . . almost tumbling out . . . just frantically getting out, I think would be the best way I could say it." *Id* at 111-12. Quarles "jumped out and started running towards [Hartwig-Morris'] car, screaming 'help' and saying that she had been kidnapped." *Id* at 122. Quarles was "[e]xtremely distraught. Very, very upset." *Id* at 23. Quarles told the men that she escaped when "she punched the driver in the face." *Id.*

Petitioner's version of events differed significantly. He testified in his own defense that Quarles approached his car at the gas station on her own initiative and asked petitioner to give her a ride from Salem to Keizer. Petitioner agreed. Along the way, Quarles asked him to stop at a friend's house. Petitioner agreed to this request, but told her he could not have any drugs in the car because he did not want to violate his probation. Petitioner took Quarles to her friends' apartment and

waited several minutes for her to return, at which point she asked him to take her home. When she could not tell him which street she lived on and her behavior became peculiar, petitioner became concerned that he was helping her participate in a drug deal. He therefore told her to get out of his car, at which point she became very angry and exited the vehicle. *Id* at 229-237.

The trial Judge recognized that the case largely amounted to a credibility contest, and found that both Quarles and petitioner had "contradictions in terms of what matches up with other testimony." *Id* at 268. But he found Quarles' testimony to have "a significant amount of detail" and that it was "remarkably consistent" with the other evidence. *Id* at 269. He also focused on the fact that Quarles' "demeanor at the scene was hysterical, and I just don't see any way around it except that she was really shook up and really hysterical and really fearful by whatever happened." *Id.*

The Judge determined that the State had not carried its burden with respect to Kidnapping in the First Degree because it had not established an intent to terrorize, but that petitioner was guilty of the lesser included offense of Kidnapping in the Second Degree. *Id* at 273-74. As a result, the Judge sentenced petitioner to 120 months in prison. *Id* at 308-09.

Petitioner took a direct appeal, but the Oregon Court of Appeals denied relief without opinion, and the Oregon Supreme Court denied review. *State v. Flennory*, 237 Or. App. 274, 240 P.3d 1141 (2010, *rev. denied*, 350 Or. 717, 260 P.3d 494 (2011).

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where the PCR court denied relief. The Oregon Court of Appeals affirmed that decision without opinion, and the Oregon Supreme Court again denied review. *Flennory v. Nooth*, 267 Or. App. 423, 341 P.3d 252 (2014), *rev. denied*, 356 Or. 389, 344 P.3d 1111 (2015).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on May 11, 2015. In his supporting memorandum, petitioner argues that he was the victim of ineffective assistance of counsel when his appointed attorney failed to thoroughly investigate and present the testimony of Marc Lucca, the owner of the Shell station. Respondent asks the court to deny relief on the Petition because: (1) petitioner fails to carry his burden of proof as to the unargued claims in his Petition for Writ of Habeas Corpus; and (2) the PCR court properly denied relief on his argued claim of ineffective assistance of counsel.

## DISCUSSION

### I.  Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the

presumption of correctness by clear and convincing evidence.    28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id*.

## II.  **Unargued Claims**

Petitioner initiated this case with a 93-page *pro se* Petition, and the court granted petitioner's request to appoint counsel to assist him.  As noted above, in the supporting memorandum counsel filed on petitioner's behalf, counsel argues

only that trial counsel was ineffective when he failed to
investigate and offer the testimony of Marc Lucca.   Where
petitioner offers no argument on his remaining claims, he has not
carried his burden of proof with respect to the unargued claims.
See *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002)
(petitioner bears the burden of proving his claims).   Even if
petitioner had briefed the merits of these claims, the court has
reviewed them based upon the existing record and determined that
they do not entitle him to relief.

## III.  Ineffective Assistance of Counsel

Petitioner asserts that counsel's failure to investigate and
call Lucca was a critical error because Lucca could have offered
testimony at trial that would have demonstrated inconsistencies
in the accounts offered by the State's main witnesses and altered
the outcome of his trial.   Because no Supreme Court precedent is
directly on point that corresponds to the facts of this case, the
court uses the general two-part test established by the Supreme
Court to determine whether petitioner received ineffective
assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-
23 (2009).   First, petitioner must show that his counsel's
performance fell below an objective standard of reasonableness.
*Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).   Due to
the difficulties in evaluating counsel's performance, courts must
indulge a strong presumption that the conduct falls within the
"wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance
prejudiced the defense.   The appropriate test for prejudice is

whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Petitioner offered an affidavit from Lucca during his PCR proceedings in which Lucca stated:

> 4. I received a call from Jon Rogers reporting that he had not seen Quarles for about 15 minutes and couldn't find her.
>
> 5. Rogers indicated that Quarles had left the store to obtain items from the storage area (located behind the store) to restock the cooler, and that she had not returned.
>
> 6. Rogers believed that Quarles just up and left, quitting her job, without telling anyone.
>
> 7. Quarles was a very hard worker and I never had any reason not to believe her regarding the work area.
>
> 8. A short time later I received a call from Quarles telling me that she had been kidnapped from the store parking lot. According to Quarles she fought with and escaped from her abductor and was somewhere out in the country in the Brooks area.
>
> 9. I told her to stay out of sight in case her abductor returned and I called the Marion County Sheriff's Office and asked them to respond to the rural area around Keizer.

8 – OPINION AND ORDER

> 10.  I was asked to provide the video of the
> area covered by security cameras, however,
> the cameras were not working and would not
> have covered the area where Quarles says she
> was abducted from.
>
> 11.  I received a subpoena duces tecum
> requesting information on my employees, which
> I complied with, but had no other contact
> with Law Enforcement or Mr. Flennory's
> attorney or his investigator.

Respondent's Exhibit 120.

Trial counsel offered his own affidavit in which he explained his rationale for not calling Lucca at trial:

> I made the strategic decision not to call
> Mark Lucca as a witness for several reasons,
> the main reason being that he was simply not
> there, i.e., he was not at the gas station at
> the time of the abduction.  My review of
> discovery and my investigation produced
> nothing to warrant questioning Mr. Lucca or
> calling him as a defense witness at trial.
> My Investigator, Thomas Nisbet-Lance, served
> a Subpoena Duces Tecum on Mr. Lucca on
> November 10, 2008. . . .  My Investigator and
> I never got the impression that he had
> anything helpful to say on my Client's
> behalf.  I also spoke with my Client many
> times about the case.  My Client was very
> engaged in his case and he communicated
> numerous ideas and opinions on how his
> defense should be handled.  But he never once
> gave me the impression that Mr. Lucca could
> help his case.  For all these reasons, I
> decided not to call Mr. Lucca as a witness.

Respondent's Exhibit 138.

The PCR court determined that petitioner failed to prove his claim:

> The trial attorney and his investigator
> talked to Mr. Lucca and trial counsel was of
> the opinion that Mr. Lucca was not a helpful
> witness.  Mr. Lucca was not present at the

> service station at the time of the abduction.
> Petitioner has failed to prove what Mr. Lucca
> would have testified to if called as a
> witness and how such testimony was likely to
> have changed the outcome of his trial.

Respondent's Exhibit 144, pp. 1-2.

Petitioner argues that, contrary to the PCR court's factual finding, counsel and his investigator did not speak with Lucca. Instead, he asserts that the only communication counsel had with Lucca was Lucca's response to a subpoena duces tecum.   Petitioner believes that counsel's failure to make personal contact with this potential witness hindered his ability to make a reasoned decision as to whether to call him at trial.

While it does not appear from the record that counsel or his investigator met with Lucca, petitioner never gave counsel any indication that Lucca could be helpful to his defense.   Counsel reasonably relied upon the representations of his client, as well as the fact that Lucca was not present for any part of the incident involving Quarles, to conclude that he need not pursue any testimony from Lucca.

Although petitioner believes counsel was still under a duty to personally speak with Lucca because Lucca had valuable information for the defense, nothing in Lucca's PCR affidavit supports this contention.   To the contrary, counsel's strategic decision was validated during the PCR proceeding where it was evident that: (1) Lucca's affidavit failed to highlight any material inconsistency in the State's case; (2) consistent with State's theory of the case, Lucca confirmed that Quarles called him in the immediate aftermath of the kidnapping to report that

she had, in fact, been kidnapped and had only escaped after fighting off petitioner; and (3) Lucca found Quarles to be a hard-working, credible individual.  Nothing in Lucca's affidavit would have changed the outcome of petitioner's trial, thus counsel was under no obligation to present his testimony.  The court therefore finds that the PCR court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied.  The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this __13__ day of February, 2017.

Marco Hernandez
Marco A. Hernandez
United States District Judge